Good morning, your honors. May it please the court. I'm Aaron Herzig on behalf of Appellant FiberLight, LLC, the defendant below. I'm going to plan to hold four minutes in rebuttal if I can. We raised three errors in our brief. The foundational error is specific personal jurisdiction, so I'd like to start there. The trial court simply lacked specific jurisdiction over my client, FiberLight, because none, or at worst, not enough, of the suit-related conduct in this case is connected to California. The trial court... Did you waive that defense? No, your honor. Why not? Well... Well, you filed a motion to dismiss for lack of personal jurisdiction when the complaint was filed. The district court denied the motion. After that, you did not list the lack of personal jurisdiction in your answer. You never raised the issue again until this appeal. The district court didn't have a chance to think about it again. Finally, on appeal, we've got the issue. If I look at Peterson v. Highland Music, 140 Fed Third 1313, it says, If a defendant were to engage in sandbagging by raising the issue of personal jurisdiction on a motion to dismiss and then deliberately refrain from pursuing it further when his motion is denied in the hopes of receiving a favorable disposition on the merits and then raising the issue again on appeal only if he's unhappy with the district court's ultimate decision, then we would not hesitate to find the defendant had waived any right to pursue the defense. Thank you, your honor. Like that's exactly what happened here. I disagree, your honor, for a couple of reasons. First of all, Peterson... That's why I asked you. I want to know why. I appreciate that. Peterson first holds that this court is simply joining its sister circuits and finding that minimum requirements of Rule 12... I don't care what we're joining or what we aren't joining. The ultimate holding is the one I read to you. That's why I wanted you to address it. Your honor, Peterson's holding, I think, says that in that situation, we would be stuck with whether the plaintiff met a prima facie burden to find personal jurisdiction here. That isn't what that says. That's why I read it to you. It has nothing to do with prima facie. I mean, I can get to prima facie because I think that's where we have to go if you haven't waived it. But I'm trying to figure out why you didn't waive it. A number of reasons, your honor. First of all, again, I think if you read at page 1318 or so of that decision at 1319... I did. At 1319, it goes on to say that this court, in fact, looks at this court says it joins its sister circuits in saying that we've met the minimum Rule 12 requirements. What Peterson ultimately does is say in a situation like this, the court could determine that it will only look at the prima facie evidence. It won't look at evidence beyond the motion to dismiss stage. It could, but it didn't say that. It said, and I read, then we would not hesitate to find that the defendant has waived the right to pursue the defense. However, it might be implemented if there are other factors militating in favor of the finding of waivers. So I looked at what factors I got here. One time we talked about personal jurisdiction. One time we fought it. We didn't even put it in our answer. We didn't raise it again. We didn't even talk about it until now we're on appeal. I'm trying to figure out why that isn't as good as waived as I can find. Your Honor, I would respectfully request that you take a further look at Peterson based on what actually happened there and the decision to look only at prima facie evidence. But I have several other reasons to address your point. First of all, of course, we had no right to interlocutory appeal after our Rule 12 decision. It doesn't matter. You could have put it in your answer. I was in your spot many times in Idaho. There's never a time when I didn't put lack of personal jurisdiction in every document I could come up with so that there was no question I would preserve the issue. Fair enough, Your Honor. We did deny, of course, personal jurisdiction in our answer. We may not have raised it as a specific affirmative defense, but our answer does continue to deny that there is personal jurisdiction. The other things I'll say on this front is what's interesting in this case is a claim that did remain through the entire course of the case was the California Wholesale Retail Contractual Relations Act. That has a jurisdictional requirement. It was litigated, and the district court at that point found that the — that that particular statute, she denied that claim based on the lack of personal jurisdiction there. So, while I think Peterson allows us to go forward without a waiver and could require that you only look at the prima facie case, the motion to dismiss, pleadings, and the affidavits that went with the motion to dismiss. Well, it seems to me, since nobody ever did anything about it, nobody held a hearing, nobody did anything except make a motion to dismiss, which is a prima facie case on personal jurisdiction. It doesn't seem to me I have any basis in this record on which to decide this except the pleadings that the plaintiff filed and the affidavits thereof. And, Your Honor, we're comfortable on those grounds as well. I think what you have is the complaint, the answer, the motion to — well, the complaint, the motion to dismiss, and that included a number of declarations. And I think if you look, Your Honor, at the affidavits offered by the plaintiff and the police here, they — the Strong declaration and the Carter declaration — I appreciate where you're going, but I'm going to make sure I understand. So it seems to me that all I've got to look at here are the pleadings the plaintiff filed and any, if you will, affidavits thereto, if any, but not any facts as alleged by you in your briefing. All I can look at is what they have in the record that was there on the motion to dismiss. Are you agreeing with that? Your Honor, I think that's what Peterson would say if you saw a waiver. Well, I don't think that's what Peterson would say. I'm — even if Peterson doesn't say it, we're here on a motion to dismiss. There's no reason for me to allow other affidavits on a motion to dismiss. We go to a motion for summary judgment and have it out. But if we're going to do a motion to dismiss, I mean, okay, I'm the old lawyer here. I've done this 411 times. It seems to me that the best I can do is look at what the plaintiff has provided. And then if I look at what the plaintiff has provided, I have to say uncontroverted allegations in the complaint are true and conflicts in affidavits are resolved in their favor. Do you agree with that? Yes, Your Honor. And again, I'm — And then at that point, I start to resolve this jurisdiction problem. And we are fine on those grounds. I think if you look at the strong declaration that was submitted by plaintiffs in support of their motion to dismiss, which is R23-1 at the excerpts of records submitted by Tam at 31 and the Carter Declaration at 23-7 of the record, what you find is — and you find the mistake of the trial court in here, too, which is that — Well, let me say what I find. I found an ongoing business relationship alleged. I found a business relationship that would include California assets alleged. I found that the defendant viewed — in other words, your client — viewed the plaintiff as the general sales agent, which could act in California, and the business that it could solicit could be solicited from anywhere, including California. And I found that the agreement was not limited to Texas opportunities. That's alleged. And with that, it seems to me it's pretty clear we have personal jurisdiction. I disagree, Your Honor. I think that — What case would say we don't? I think a raft of cases, starting with Walden v. Fiori, the Supreme Court's case. I don't think Walden does, because Walden just says if you have a contract and that's it, that's all you got. Don't do it on that. But that's not what got alleged here. I think — One contract. I think, Your Honor, that Walden clarifies, and I think a panel of this Court explained that in Axiom very recently, that the defendant's suit-related conduct — Well, I have — Go ahead. This analysis begins with the defendant's suit-related conduct. What is it that the defendant did, not with the plaintiff, but with California in this forum? It requires two things. First, where — which contacts this suit arises out of. There is no question in this case that the contacts do not relate to California in any material way. All right. Now, just a minute. There are California assets which underlie this very contract, from which California assets this particular plaintiff can make contracts on your behalf. Your Honor, the suit-related conduct here, this suit is not about any California assets. It is clear — It's about an agreement, at least as of the time of the motion to dismiss. There was a breach of contract claim as well. And the allegation is that it was — they were your general sales agents. It wasn't a breach of contract. We've entered into a specific contract as to these particular deals. It was an overarching contract that goes beyond just the specific deal. So that's the — that's what underlies this, not just a specific deal related to something happening in Texas. Your Honor, I think since Burger King, but certainly since Walden and then this court in PICO, and then if you look at Axiom and Morrell, the more recent decisions, it is clear that simply contracting with a Californian does not give jurisdiction over California. But the contract here is not just contracting with California. Let me give you an analogy. Suppose instead of making deals for fiber lights, fiber connections between San Francisco and San Jose, which none were made. Suppose you were just a general real estate leasing agent. And fiber light had buildings all over the country. And you were a general agent. And they had buildings in California. Wouldn't you say that you had sufficient contacts with California? Not of the dispute in this case, Your Honor. It wasn't about that particular property. What you're saying is there's no personal — there's no specific jurisdiction unless there's some action taken under the general agreement with respect to a California transaction. Yes, Your Honor. What case do you have on that? Certainly not Walden v. Fiore, which was a tort case. Certainly not Burger King. Well, Your Honor, I think Burger King does. I think if you look at the contacts that they describe in Burger King, this is nothing like it. But I think Walden certainly does. I think PICO from this court in 2015 following Walden has both a contract and a tort element. And I think PICO says exactly the same thing. In fact, what PICO says is the fact that a contract envisions one party discharging his obligations in the forum State cannot standing alone justify exercise of jurisdiction. And that's what the plaintiff claims is. They sat in California and did some work on this contract, therefore California. In fact, if you look at their briefing on the motion to dismiss, what they say is that fiber light is correct, that most of the known damages arise out of Tam's work in the Texas. That's because that's the suit-related conduct. If your client had had a specific contract with them, being a California corporation, only to do business in Texas, I think your argument would be good. But that isn't what it is here. This is not a contract for the California corporation to only do business in Texas. This is a contract, general sales contract, as my colleague has emphasized, where they could act in California. You had assets in California that they could use in doing what they had to do. And they had the general sales ability to do it. It just so happens that the only reason they don't have a California transaction is you wouldn't pay. You said go to court. No, Your Honor. I mean, the honest truth is with this general sales agent agreement, they could have done it any place, and you had California assets for them to do it. Hypothetically, Your Honor, they could have, but this is about defendant suit-related conduct. I think one thing that a lot of practitioners are struggling with— Wait a minute. Suit-related, I think you're really trying to narrow me up to say this is only a contract about doing stuff in Texas, because that's the only thing that had happened thus far. Even though the contract is really about more than Texas, and I had California assets to make the contract work, because the only thing they'd done is in Texas, they got to go to Texas. That's what you're arguing. Your Honor, I'm arguing that this lawsuit is not about California. So let me ask this. What if you had an explicit written contract that said you are a general sales agent, and you can—and we expect you to sell our fiber throughout the country, including California? And that was California, Texas, anywhere you've got it. And then there was a dispute over one aspect of that, which was a deal in Texas. Would you say there's no personal jurisdiction because the only thing at issue now is this specific deal in Texas, even though the contract includes California, and we have stuff in California, and they can sell our stuff in California? The context, Your Honor, out of which this suit arises are not related to California. So under your hypothetical, yes, I think it's about where this case is. I think if you look back at Bristol-Myers, I think the Court has been very clear that jurisdiction has narrowed perhaps beyond what my civil procedure teacher taught me in law school. Your Honor, I realize that I'm about out of time. I hope, given the colloquy, you'll allow me a few minutes of rebuttal after my colleagues come. We'll give you two minutes. Thank you, Your Honor. Good morning. May it please the Court. Frank Coleman for Telecom Asset Management and Mr. Alexander Berg at counsel table, who will not be arguing. I was prepared to say that the personal jurisdiction issue could be resolved with one sentence, that FiberLite reached into California to hire a California resident to be its long-term agent in California and the rest of the country, purposefully availing itself of the privilege of doing business in California. Now, all of the cases that they've cited, for example, like PICO, there was a factor and, in fact, in most of these cases, there was a single factor that the Court said, well, they want jurisdiction on that single factor. And in PICO, they said, no, the resident of the plaintiff as a single factor is not enough, but it didn't say it wasn't relevant. And in this case, we have a bunch of these factors, all of which taken together, in our opinion, is overwhelming evidence of personal jurisdiction. Now, with respect to the Peterson waiver, we note, and the record shows that you are correct, that it wasn't raised ever again. In fact, when it was raised with this Court, it was the appellee who had to supplement the record because they were running away from the prima facie case. Kennedy, how often does one have to say there's no personal jurisdiction after using 12.2 of the Federal Rules of Civil Procedure to say it? Well, I think what they have to do to keep saying, you have to keep knocking on the courtroom door and saying there's no personal jurisdiction every time you walk in? No. I think if they raise it once, they're stuck with the prima facie case. Right. If they wish to raise it again, and what FiberLate appeared to be doing was trying to raise it based on trial evidence and other evidence, I think when that evidence appears, Your Honor, we move again because this shows there's no personal jurisdiction. They certainly had opportunities throughout. When the summary came out, they said, well, we're not going to do that, we're not going to do that, we're not going to do that, we're not going to do that, we're not going to do that, we're not going to do that, we're not going to do that, we're not going to do that. If they were to do it again, they would have to do it again. Yes, Your Honor. Because I was going to ask you, why didn't you waive the waiver? Well, yeah. And I was prepared. I mean, it seemed to me you waived the waiver. I saw the waiver. I looked at it. I thought it was waived, but you didn't say anything about it, so I was going to say, why didn't you? It seemed like you waived. Yes. So now you're telling me the reason you didn't waive it is because for you, your mouth stuck with your pleadings. Correct. All right. And with respect to the waiver, and I was prepared for that because, Your Honor, I was looking for us to have said somewhere in our brief the word sandbagging and waiver. We did not. I know you didn't. Okay. However, given how this case unfolded with respect to the lax observation of the rules, I believe that even this Court, sua sponte, could say, based on the post-trial conduct of this appeal, that is the additional evidence, perhaps, that the Peterson Court didn't have to say, yeah, they're sandbagging. We just didn't have anything other than the sandbagging. Well, the problem I have is, at that point, I'd like you to have said it, not me. And I would have liked to have said it, too, Your Honor. And because you didn't say it, then I'm stuck with what the alternative is. So I'm glad to hear what you argue the alternative is. Okay. Well, I don't believe you're stuck because preparing for this argument, you know, I was trying to determine how much do I get into the beef of it. I think the beef of the argument, we win. I don't think we have to rely on waiver. I don't think we have to rely on anything to get to it. If this Court gets to it, either because we didn't raise it or because it doesn't find that there was a waiver, overwhelming evidence of personal jurisdiction. I don't – and all of the cases that were cited, at best, are inverse of what we have here. Like in the Pico case, if Mr. Weston had sued Pico in Michigan, I think Michigan would have had jurisdiction. But they were trying to bring the Michigan resident that they had gone to, that they had gone into Michigan, that they had flown twice to California at their expense, that they wanted to sue him in California on that basis. And this Court said, no, that's not enough. And we agree. In most of these personal jurisdiction cases, I believe initially the Court can look at it and say, yeah, that doesn't sound like personal jurisdiction, so what are the additional factors that the party wishes us to consider? I think in this case, you can say, wow, that looks like personal jurisdiction to me based on all these factors. What can FiberLite show to show that there isn't personal jurisdiction? And they haven't shown anything. Kennedy, what context did FiberLite have beyond Texas? I mean, what deals were made other than Texas? Now, there weren't any other deals made other than Texas. There weren't any deals made in California, even though FiberLite has assets here. And so, therefore, what is the context of California? Well, I don't know if this is in the prima facie case. So if it's not, I'm not sure to raise it. But I believe in our prima facie case, we presented deals in other States that just didn't happen. It turned out, for example, we tried to present them with a deal in Florida, I believe, and they weren't interested. We tried to present them with a deal elsewhere, and they weren't interested. Where we struck Paydirt was Texas. And nobody had ever contemplated that that was where we would strike Paydirt. But you didn't offer them any deals in California. We didn't, because no deals in California materialized, I believe, in the two or three weeks before the Texas deal. But where is all this overwhelming evidence of California context by the defendant again? Well, because everything to get the $330 million Texas deal occurred because of the work that Tam was doing in California, e-mails, telephone calls, preparing, you know. Well, that shows Tam's contact with California, but why FiberLite? But they were Tam was FiberLite's agent in California. So the activity, once they had established the agency relationship, Tam's activities in California were FiberLite's activities. That's the nature of an agency agreement. The Verizon business contacts seem to be what the defendant wanted in the first place in order to really get you as an agent. Does that relate at all to why, I mean, I couldn't find it in the records, so I'm asking you to help me. Verizon's business just wasn't California business. No, Verizon's business was all over the nation business. That's absolutely right. And in fact, the two Texas deals had some to do with Verizon, right? The Texas deals were Verizon. They were all four of them. Well, I put some just so you wouldn't say, you're wrong, Judge. Right. All right. So Verizon was involved even in the Texas deals. So why isn't, does Verizon add anything more to this California contact than that? Well, it does because what the appellant has referred to disdainfully as a footnote or whatever in a PowerPoint presentation, when they met with Verizon to show their bona fides, their credentials, they not only touted the California, but when you put that, their assets in California, they mentioned their assets elsewhere. And the purpose of that was to show them that they do business in California. And I believe, and I'm going from memory, that Texas was also one of the places mentioned in that PowerPoint presentation. So I think it's a stretch to say that the reference to the California assets in the meeting with Verizon was a throwaway. I understand your argument now. Okay. Your Honor, with respect to the other two issues, I'd like to perhaps close with my arguments on that, my one sentence, the so-called settlement evidence, which was really evidence of a continuing attempt by the parties to nail down the terms of an agent's agreement that was being performed by both parties. Both parties were doing everything necessary except agreeing on the terms of the compensation. So that was introduced for that purpose, and I believe the district judge found that it was done for that purpose. Regardless, it wasn't mentioned, and there's no evidence. It was relied upon if it was in fact settlement evidence by the district court, and therefore, at best, it's harmless error. And with respect to the last one, perhaps it was added because someone believes in the rule of threes, so we have to have three issues. The third issue seems to be, if you boil it down, is, yes, the district judge was wrong. The district judge didn't reach the decision we wanted, even though it was supported by evidence, and even though it was the result of several credibility determinations, this Court, without anything more, should conclude that they're wrong. I don't know that I need to say anything more about that. Thank you. We ask that this Court affirm. Roberts. Thank you, Your Honor. One other issue with regard to the waiver and the other issues you asked about. The second prong of any jurisdictional test in this circuit, of course, is the causation test, the but-for causation. There was never any waiver of the discussion of that, and that's, I think, Your Honor, part of what you were getting to in your hypothetical. What are the acts of Fiberlight that but for those acts there would be this controversy? The trial court got it wrong. It simply said, but for the contract that they entered into with Tam. Well, that certainly can't be the case. We've known that for a long time. So I think when you look for the but-for analysis in the second prong of Schwarzenegger and Pico and this Court's jurisprudence, you'll see that there is no but-for causation with regard to these particular matters. The complaint mentions Texas 246 times. It mentions California exactly 12. That's because the focus of this case, which is the word that this Court now uses as an axiom in Morrill, is Texas. It certainly is not in California, where Tam happened to be. And I think in this Court's jurisprudence it's been very clear that where the plaintiff could simply carry this injury to any particular State, it is insufficient for personal jurisdiction here. So I think, and with regard to, I'm not exactly sure what my colleague talks about with regard to sandbagging at the appellate level. We raised it on a motion to dismiss. That's where the rules say you raise it. We don't get an interlocutory appeal. So we have our opportunity here to talk about it. We are perfectly comfortable talking about it on the record at the motion to dismiss stage. I think when you look at the Strong Declaration and the Carter Declaration, they're best shot unadorned of saying why this case belongs in California. They talk about Tam's contacts with California. They do not talk about Fiberlight's actions within California because there aren't any. This case does not arise out of any actions that Fiberlight took here. It may have taken them in Georgia or Delaware or Texas. It did not take them here. Kennedy. You don't think the actions of Tam in California on behalf of Fiberlight are imputed actions of Fiberlight in California? No, Your Honor, I don't. Thank you very much for your time. The matter is submitted. We thank counsel for their argument. And we proceed to the last case of the day, Hillsman versus Escoto.
judges: Bea, N.R. Smith, Staton